# STRAFFORD,

## DECEMBER TERM, A. D. 1854.

---

## FROST *v.* MARTIN.

The question whether evidence proves, in law, a payment of a sum of money is not a question of fact for the jury, but a question of law, to be determined by the court.

Where a person purchases a note with a knowledge of all the material facts connected with it, with the agreement that he was to take it at his own risk, he has no cause of action against the person of whom he purchases it.

Where a sum has been paid upon a note which afterwards comes into the hands of the plaintiff, for which sum one of the payees gives a receipt to the maker, it is not material that the plaintiff, in an action against a third person, should know the particular terms of the receipt, if he knows it was for the sum received on the note.

It is a matter discretionary with the judge how far he will state the facts, in summing up a case to the jury.

After verdict, it is too late to except, for a matter which might have been rectified on the trial if it had been suggested.

ASSUMPSIT, for $250, money had and received and paid, laid out and expended.

In April, 1849, A. Staples gave a note, signed by himself, D. Pray, and T. G. Morse, for $455, payable to S. Lock, J. A. Smiley, and T. Shapleigh, or order, in ninety days, with interest. A few months afterwards, Lock, in whose hands the note then was, made a sale of it to the defendant, and delivered it to him, receiving the principal thereof in full. The note was then indorsed by Lock and Smiley, two of the payees, but not by Shapleigh, the other payee.

Shortly after this sale and delivery of the note to the defendant, Shapleigh, who had no knowledge thereof, received from Staples $200 on the note, and gave a receipt therefor, specifying that it was so received on this note.

Shortly after the defendant purchased the note he made a sale of it to the plaintiff for the amount thereof, less a part of the interest then accrued. He received pay by a note and account he was then owing the plaintiff, which were given up and discharged, and a small balance in cash. The note was then in the same condition as when received by the defendant, and he did not indorse it himself.

The plaintiff afterwards, in the collection of the note, was obliged to allow the $200 paid to Shapleigh, as above stated; and this action is brought to recover that amount from the defendant.

At the trial, it was admitted that the sum of $200 was properly allowed by the plaintiff in the collection of the note, as being a payment thereon which could not be avoided. The only point in dispute was whether the defendant was legally liable to the plaintiff therefor.

Evidence was offered showing that when the parties first had any talk about a sale of the note, the defendant told the plaintiff he had understood that Shapleigh had received $200 on the note of Staples and given a receipt therefor; that no bargain was then made, the plaintiff saying he would see Shapleigh about it; that he afterwards saw Shapleigh, who told him that he had received $200 of Staples on the note, and given a receipt therefor, but afterwards, ascertaining that the note had been sold by Lock to the defendant, before he received the money, he offered to return it to Staples, but Staples told him he might keep it on other claims he, Staples, was owing him, and therefore he claimed so to hold it, and not as payment on the note; and that the plaintiff then saw the defendant and made a bargain for the note, stating that he had seen Shapleigh, who had told him about the receipt, and he did not care for that, as it was

given after the sale of the note to the defendant, as above stated.

There was also evidence showing that the defendant, while he held the note, spoke to Morse, one of the makers, about the payment of it, and Morse then claimed to have allowed on it the $200 which Shapleigh had received, as above stated, and whose receipt therefor Morse said he received from Staples the day after it was given. Also, evidence that the $200 paid by Staples was obtained from a bank on a note signed by Morse, as surety for Staples to get money to pay this note and other debts; but there was no evidence that the defendant had any knowledge of this.

The plaintiff requested the court to instruct the jury that though both parties knew all the material facts in relation to the payment to Shapleigh, yet if they believed that the payment was not in law a payment on the note, and therefore the whole might be collected notwithstanding that, and the sale to the plaintiff was made with this belief, and the whole amount paid by the plaintiff to the defendant for the note, the plaintiff was entitled to recover in this action. The court declined so to instruct, but instructed the jury that if the plaintiff, with a full knowledge of all the material facts, made a purchase of the note, with the understanding that he was to take it at his own risk, he could not recover in this action; but if there was any agreement or understanding that the defendant was to be responsible for the event, he could recover.

The court also instructed the jury that it was not material that the plaintiff should know the particular terms of the receipt from Shapleigh to Staples for the $200, if he knew, in substance, that it was for that amount as received on this note; and further, that the defendant's omission to state to the plaintiff his communication with Morse, as above stated, if accidental and not by design, was not material.

The plaintiff's counsel, in his argument, claimed that the

circumstance of the manner in which the $200 paid by Staples was obtained, was material, but the court, in the charge to the jury, inadvertently omitted to allude to that in mentioning the facts relied upon by the plaintiff as material, and the counsel not calling the attention of the court to the same, nothing was said by the court in relation thereto.

A verdict being rendered for the defendant, the plaintiff moved that the same be set aside and a new trial ordered, on account of error in the instructions of the court.

*R. Eastman*, for the plaintiff.

At the commencement of the transaction between the parties in relation to the $455 note, the defendant was honestly and legally indebted to the plaintiff in a sum about equal to the amount of said note.

During the negotiation for the payment of this debt with the note aforesaid, the defendant informed the plaintiff that he had understood that some money had been paid by Staples to Shapleigh, and a receipt given. This was, of course, sufficient to put the plaintiff on inquiry, and he declined taking the note at that time, and he would see Shapleigh about the matter. He saw Shapleigh, and learned from him that he had two claims against Staples, one the $455 note, payable to himself, Lock, and Smilie, and the other payable to himself alone; he also learned that some time previous Staples had paid Shapleigh $200, for which Shapleigh had given him a receipt. The question then arose, upon which of these demands had the $200 payment been legally applied. It could be legally appropriated to but one of them. Shapleigh claimed that it had been appropriated to his individual debt, by direction and consent of Staples, the maker, and not on the $455 note. And the plaintiff had a right so to consider it, and should recover in this action, if at the time he took the note of the defendant in payment of his claim, he did not know all the facts connected with or in relation to the payment of the $200 to Shapleigh, ma-

terial to the question whether that payment was to be con-
sidered in law as such a payment on the $455 note that it
could not be changed or appropriated to any other purpose.

We contend that three such material facts were withheld
from the plaintiff, viz :

1st.  The terms of the receipt, specifying that the $200
was received on the $455 note, and was to be indorsed
thereon.

2d.  That Morse, one of the sureties on the note, had as-
sisted in furnishing the $200 to pay on this note, and that
it was raised for that particular purpose—and

3d.  That said Morse, at the time of the plaintiff's tak-
ing the note, had the $200 receipt, and claimed to have it
allowed on the $455 note, according to its terms.

I.  It was material that the plaintiff should know the
terms of the receipt.  The only information in relation to
the receipt he had, was, that Shapleigh having two separate
demands against Staples, gave him a receipt for $200.  He
was not told that Staples gave any direction as to which
debt the payment should be appropriated, or that the receipt
specified the debt to which it should be applied, and from
the conduct of Staples, as reported to him, he had a right
to think and believe, that on the part of Staples it was a
general payment to Shapleigh, to be applied by him on
either demand he saw fit.  If it had been such general pay-
ment by Staples, although Shapleigh might intend when he
received it, to apply it to the $455 note, yet he had a per-
fect right actually to appropriate it towards the payment of
his other demands, as he informed Frost he had done.  And
the fact that this was so applied by Shapleigh, without the
least objection on the part of Staples, and that the receipt
was retained by Staples without change or alteration, would
lead any one to think that it was a general payment and
receipt, and would apply equally as well to the other de-
mands of Shapleigh, as to the $455 note.  The confidence
with which Shapleigh, the man of all others living who

Frost v. Martin.

knew best the facts in the case, insisted that the $200 had been appropriated to his other claims, and that the receipt had nothing to do with the $455 note, satisfied Frost that such was the fact; but had he known the terms of the receipt, with the fact that Morse at that moment held the receipt as evidence that $200 which he had assisted in raising, had been paid on the note, on which he was surety, and insisted that it should be thus allowed, he most assuredly would not have taken this note, which he must have known would be subject to controversy, in payment of his demands against Martin, which were as good as demands against any man in the State, and for a trifling deduction of interest hardly sufficient to pay Martin's expenses to Portsmouth, to pay the debts.

II. It was material to know that the sureties on the note assisted in paying the $200. Not that this fact alone would show conclusively that $200 had been legally applied to the note, but taken in connection with the fact, that one of these sureties actually received the receipt of Staples the next day after it was given, and held it, claiming that it should be allowed on the note, would have a strong tendency to show that the $200 was such a payment on the note, that the proceedings, of which Frost was told by Shapleigh, would not legally divert the payment from the note to any other purpose.

III. It was material that the plaintiff should know that Morse received the receipt from Staples immediately after it was taken by him, and claimed that it should be allowed on the note, as specified therein. If all the makers of the note had agreed or assented that the $200 should be applied to Shapleigh's claim against Staples alone, it might have been so appropriated, and the $455 note might remain due and unpaid, and Frost might very well think that they did so assent. He had no right or reason to presume that Staples would commit a fraud upon his sureties. But if the fact had been communicated to him, that Morse had assisted to

raise the money, and that he received the receipt from Sta-
ples the very next day after it was made, and held it as ev-
idence that the payment had been made as therein specified,
and insisted and rightfully expected that it would be thus
allowed on the note, he certainly could not have doubted
that Morse refused to allow the $200 to be diverted from
the note, and it can make no difference as to the question
whether Frost had knowledge of all the material facts,
whether this information was withheld from him by acci-
dent or design. If by design, it would not only be ignor-
ance of a material fact on the part of Frost, but actual
fraud on the part of Martin. Another fact of great conse-
quence to Frost would have appeared to him, if he had
known that Martin thus received and held the receipt, to
wit, *bad faith on the part of Staples.* An intention to de-
ceive either Shapleigh, Morse, or, which is most probable,
the holder of the note. He gave Morse the receipt to sat-
isfy him that $200 had been paid on the note upon which
he was liable as surety. He induced and allowed Shap-
leigh to suppose that he had received $200 on his individual
debt, and also allowed Frost to take the note, in perfect con-
fidence that it was all due.

Upon the whole of this branch of the case, when we con-
sider that as good a lawyer as the judge who tried this case
at the January term, 1852, after a full hearing and careful
examination of the whole matter, and having the receipt,
with all the other facts before him, erroneously instructed
the jury, " that if the money so paid by Staples to Shap-
leigh was his, Staples' money, procured without the aid of
either of the sureties, and without an understanding between
him and either of the sureties, that it was to be applied to
the payment of the note, then Staples and Shapleigh might,
after the money had been paid over by Staples to Shap-
leigh, by an agreement between them, apply the money to
other demands, without the consent of the other signers of
the note." Common justice requires that an ordinary busi-

ness man should have full knowledge of every fact material to the right decision of the question, when, in dealing in good faith with his neighbor, he is called upon to decide as to the legal effect and operation of the acts of the parties connected with the subject matter, and especially where one of the parties to the transaction informs him of the state of the matter, and he acts in accordance with that party's statement.

IV.   The court should have instructed the jury as the plaintiff requested.   When the $200 was paid to Shapleigh, Martin was the owner of the $455 note, and he was entitled to whatever sum might be paid on it while he was the owner of the note.   The $200, therefore, was received by Shapleigh to Martin's use, and was so held when Frost took the note of Martin, and there was in fact but $255 due on the note.   Now both Martin and Frost believed and understood that the whole of the $455 note was due from the makers thereof.   Martin, believing it all due, intended, in fact, to pay Frost the full amount of his claim, and supposed he was doing so ; and Frost intended and believed he was receiving his full pay.   There was no difference of opinion about the matter.   The intention of the parties to the contract was the same.   There was nothing like the compromise of a doubtful claim, for both parties believed and understood that the whole of the $455 was due, and was transferred to Frost.

It is a fundamental rule in relation to contracts and agreements, which originates and governs every other rule, that the contract shall be so interpreted as to give effect to the intention of the parties, as far as it is legal, and mutually understood, and wherever such intention is ascertained, it will prevail.   The intention of the parties is to govern.

In 1 Story's Eq. Juris. § 122, it is said that where a party acts upon the misapprehension that he has no title at all in the property, it seems to involve in some measure a mistake ·

of fact, that is, of the fact of ownership, arising from a mis= take of law.

In section 123, Judge *Story* says, in discussing the case of *Turner* v. *Turner*, " if the case proceeded upon the ground that the plaintiff had no knowledge of his title to the mort= gage, and therefore did not intend to release any title to it, the release might well be relieved against, as going beyond the intention of the parties upon a mutual mistake of the law. It might then be deemed in some sort a mistake of fact as well as of law. It was certainly a plain mistake of the settled law, and if both parties acted under a mutual misconception of their actual rights, they could not justly be said to have intended what they did. Mutual misappre= hension of rights, as well as of the effects of agreements, may properly furnish in some cases ground for relief."

In section 134, it is said, cases of surprise, mixed up with a mistake of the law, stand upon a ground peculiar to themselves. Where the surprise is mutual, there is, of course, still stronger ground to interfere, for neither party has intended what has been done. They have misunder= stood the effect of their own agreements, or acts, or have presupposed some facts or rights existing as the basis of their proceedings, which in truth did not exist. Contracts made in mutual error, under circumstances material to their character and consequences, seem upon general principles invalid. *Non videntur qui erant consentire*, is a rule of the civil law, and it is founded in common sense and common justice. But in its application it is material to distinguish between error in circumstances which do not influence the contract, and error in circumstances which induce the con= tract.

In *Brigham* v. *Brigham*, 1 Ves. Sen. Rep. 126, the plain= tiff had purchased of the defendant land which was his own already, under a devise. At the time of the sale it was known to them both that a devise had been made, but they believed and understood that the devisor had no power to

make the devise. Both parties knew there was a will giving the land to the plaintiff, but when the sale took place, they both thought the will good for nothing, and that the legal title was in the defendant. The plaintiff recovered the money he had paid the defendant for the land.

In *Mowatt* v. *Wright*, 1 Wend. 355, it is said that " the cases founded on mistake seem to rest on the principle that the parties, believing that a certain state of things exist, come to an agreement with such belief for a basis. On discovering their mutual error, they are remitted to their original rights."

In *Champlin* v. *Laylin*, 1 Edw. 467, it is said " a contract entered into under a mutual misconception of legal rights, amounting to a mistake of law in the contracting parties, by which the object of it cannot be accomplished, is as liable to be set aside, or rescinded, as a contract founded in mistake of fact."

*Jordan*, for the defendant.

GILCHRIST, C. J. Staples, Pray, and Morse, made a note for $455, payable to Lock, Smiley, and Shapleigh, in ninety days. Lock, having the note, sold it to the defendant, after it was due, receiving the principal. Lock and Smiley then indorsed it. Shapleigh, not knowing of this, received $200 of Staples on the note. Afterwards, the defendant sold the note to the plaintiff, and received payment therefor. When the note was paid to the plaintiff, he was obliged to allow the $200 paid to Shapleigh, and this suit is brought to recover that sum of the defendant.

It was admitted that the $200 was properly allowed by the plaintiff as a payment which he could not resist. The question made was, whether the defendant was legally liable for that sum to the plaintiff.

It appears from the case that the plaintiff was told, both by the defendant and Shapleigh, that $200 had been paid

on the note by Staples, and which Shapleigh offered to return, on learning that the defendant had bought the note; but Staples said he might keep it on other claims he owed Shapleigh. The plaintiff then bought the note, saying he did not care for the receipt, as it was given after the sale of the note.

Morse claimed to have the $200 allowed on the note, saying that he received the receipt the day after it was given.

The court declined to instruct the jury that if they believed the payment was not in law a payment of the note, and the sale to the plaintiff was made with this belief, &c., he might recover; and this instruction was correct. The jury are not to say whether this was in law a payment.

The court were right in instructing the jury that if the plaintiff, knowing all the facts, bought the note at his own risk, he could not recover.

The court were also right in saying that it was not material that the plaintiff should know the particular terms of the receipt, if he knew it was for that sum received on the note.

The conversation between the defendant and Morse does not seem material to the rights of these parties. It is merely that Morse said the $200 ought to be allowed on the note.

The omission by the court to mention the manner in which the $200 was obtained, is no ground of exception. How far the court will go in stating the facts, is matter of discretion; and if it were not, it was too late after verdict to except, for a matter which might have been set right at the time, if the counsel had suggested it.

*Judgment on the verdict.*